JUDGE KATHLEEN CARDONE

THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2022 OCT 28 PM 3: 25
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| | |
|---|---|
| **MABEL ARREDONDO,** § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> **SECURICO INSURANCE SERVICES, INC** a § <br> Texas Corporation **ABENITY, INC** a Tennessee § <br> Corporation and **MYDYNAMIC** unknown § <br> Business Entity § <br> § <br> Defendants. § § | **EP22CV0389** |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.   The Plaintiff is MABEL ARREDONDO ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.   Defendant SECURICO INSURANCE SERVICES, INC ("Securico") is a corporation organized and existing under the laws of Texas with its principal address at 6911 North RR 620, Suite A-300, Austin, Texas 78732. Securico can be served via registered agent Robert Myer at 26701 Founders Place, Spicewood, TX 78669.

3.   Defendant ABENITY, INC ("Abenity") is a corporation organized and existing under the laws of Tennessee with its principal address at 725 Cool Springs Blvd, Suite 600, Franklin, TN 37067. Abenity can be served via registered agent Brian Roland at 725 Cool Springs Blvd, Suite600, Franklin, TN 37067.

1

4. Defendants MYDYNAMIC1 is an unknown business entity that will be revealed during Discovery.

5. Defendants Securico and Abenity are hereinafter collectively referred together as "Defendants".

## JURISDICTION AND VENUE

6. **Jurisdiction.** This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

7. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

8. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when she received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

9. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

10. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

12. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

14. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

15. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

16. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

17. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

18. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

19. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

20. The FCC confirmed this principle in 2013 when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter*

Removed

*of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

21. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

22. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

23. Plaintiff's personal cell phone ending in XXX-XXX-1821 successfully registered her phone to the National Do-Not-Call Registry in May 2022.

24. Plaintiff received at least four (4) unsolicited phone calls to her personal cell phone ending in -1821 from telemarketers calling on behalf of Defendants.

25. Plaintiff was bombarded and harassed at least four (4) times by telemarketers soliciting life insurance policies on behalf of Defendants.

26. On August 12, 2022, at 11:35 AM Plaintiff received one of four phone calls to her personal cell phone ending in -1821. Plaintiff answered the phone and was greeted by a solicitor who identified herself as "Kathy from Senior Benefits."

27. On August 19, 2022, Plaintiff again received another call to her personal cell phone ending in -1821 Plaintiff answered the phone and was again greeted by Kathy" from "Senior Benefits"

28. On August 19, 2022, at 12:10 PM Plaintiff received yet another call from Kathy from Senior Benefits. Plaintiff was eventually connected to a "licensed advocate."

29. Plaintiff was then transferred to a telemarketer named Dane who falsely identified the company he was calling on behalf of "Senior Benefits" with "final expense group".

30. Dane advised Plaintiff that the phone call was regarding a final expense insurance program that covers funeral, burial, cremation, or any other final expenses.

31. Dane then asked Plaintiff qualifying questions and solicited Plaintiff for a life insurance policy.

32. Plaintiff did not want or need a life insurance policy however she did for the sole purpose of identifying the company responsible for the illegal calls.

33. Plaintiff followed the process and received a contract via email from Dane m.bowers@mydynamic1.com which identified Defendants Securico and Abenity. *"Exhibit A"*

34. Plaintiff received the insurance policy via regular mail to her residence which revealed who was responsible for the illegal robocalls.

35. Plaintiff never provided "prior express written consent" or any other form of consent to Defendants or any affiliate or agent of Defendants to transmit calls to her phone number ending in -1821.

36. The calls Plaintiff received from Defendant have caused Plaintiff actual harm. This includes the aggravation and invasion of privacy that result from the placement of such calls.

37. Table below displays the calls made to Plaintiff from or on behalf of Defendants.

TABLE A

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 8/12/2022 | 11:35 AM | 915-291-4751 | Kathy from Senior Benefits |

| 2 | 8/19/2022 | 12:06 PM | 915-666-3406 | Kathy from Senior Benefits |
| 3 | 8/19/2022 | 12:10 PM | 915-465-2227 | Kathy from Senior Benefits |
| 4 | 9/23/2022 | 1:21 pm | 915-465-4976 | Kathy from Senior Benefits |
| 5 | 9/23/2022 | 1:24 pm | 915-666-3405 | Kathy from Senior Benefits |

38. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

39. Plaintiff called each and every phone number listed in Table A. Only phone number 915-465-2227 is a working phone number. Each and every other phone number was spoofed and is not a working telephone number associated with any of the Defendants.

40. Plaintiff has limited data storage capacity on her cellular telephone. Incoming telemarketing calls consumed part of this capacity.

No emergency necessitated the calls. Plaintiff sent an internal do-not-call policy request to admin@securicolife.com, agents@securicolife.com and contracting@securicolifr.com on October 12, 2022, which are emails listed on the website they own and control https://www.securicolife.com.

41. Plaintiff sent an internal do-not-call policy request to Abenity to email support@abenity.com on October 12, 2022 which is an email listed on their website they own and control https://securico.abenity.com.

42. On October 14, 2022, Plaintiff received an email from Courtney Strobeck c.strobeck@mydynamic1.com, providing their National Do-Not-Call policy.

43. On information and belief, the Defendants did not train its agents who engaged in

7

telemarketing on the existence and use of any do-not-call list.

## VICARIOUS LIABILITY ON DEFENDANTS SECURICO AND ABENITY

44. Defendants are vicariously liable under the theories of implied authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

45. "A[n] entity may be held vicariously liable for violations of the TCPA 'under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.'" Aranda v. Caribbean Cruise Line, Inc., 179 F. Supp. 3d 817, 831 (N.D. Ill. 2016) (Quoting In re Joint Petition filed by Dish Network, LLC, 28 F.C.C. R. 6574, 6582 ¶ 28 (2013)). "Formal Agency" in this context means actual authority, which may be express or implied. Id,.

46. Defendants Securico and Abenity gave express authority and apparent authority to telemarketers with full knowledge the administration of sales and solicitation of sales of the business funding services marketed as a result of the contract would be marketed using an automatic telephone dialing system ("ATDS").

47. Defendants Securico and Abenity have ratified the conduct and behavior of the telemarketers by repeatedly signing contracts to hire them to administer sales and the solicitation of sales of their business funding services with the full knowledge and expectation Defendants would violate the TCPA.

48. Defendants Securico and Abenity hired Defendant Dynamic with the expressed intention of having Dymamic make calls on their behalf to solicit life insurance.

49. Defendant Securico and Abenity directed Defendant Dynamic on which states to call, what hours to make the phone calls, and provided Dynamic with what minimum health and income requirements were needed to qualify for the insurance policies.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

8

## AS A RESULT OF THE CALLS

50. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

51. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

52. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

53. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

54. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

### Plaintiff's cell phone is a residential number

55. The calls were to Plaintiff's cellular phone ending in-1821 which is Plaintiff's personal cell phone that she uses for personal, family, and household use. Plaintiff maintains no landline phone at her residence and has not done so for at least 5 years and primarily relies on cellular phone to communicate with friends and family. Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has her cell phone registered in her personal name, pays the cell phone from her personal accounts, and the phone is not primarily used for any business purpose.

## I. FIRST CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

1. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

    b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

    c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

3. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

4. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

5. Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

## II. SECOND CLAIM FOR RELIEF:

### Violations of the TCPA "Sales/DNC" Prohibitions 47 C.F.R. § 64.1200(c)

### (Against Defendants Securico and Abenity)

1. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2).

3. Plaintiff was statutorily damaged at least four (4) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500 per call.

4. Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violation of 47 U.S.C. § 227(c)(3)(F).

## III. PRAYER FOR RELIEF

WHEREFORE, Plaintiff MABEL ARREDONDO prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for four (4) calls.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G. An award to Plaintiff of damages, as allowed by law under the TCPA;

H. An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity;

I. Such further relief as the Court deems necessary, just, and proper.

October 28, 2022,                                  Respectfully submitted,


                                            *Mabel Arredondo*
MABEL ARREDONDO
Plaintiff, Pro Se
9328 Lait Drive
El Paso, TX 79925
915-999-8219

Plaintiff hereby demands a jury trial.